# STATE OF MICHIGAN

# COURT OF APPEALS

In re AH, Jr. and GC, Minors.

UNPUBLISHED
November 10, 2016

Nos. 331598/331742
Eaton Circuit Court
Family Division
LC No. 14-019030

Before: RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

In Docket No. 331598, respondent-mother appeals as of right the order terminating her parental rights to AH and GC pursuant to MCL 712A.19b(3)(b)(*ii*), (c)(*i*), and (j). In Docket Number 331742, respondent-father[1] appeals as of right the order terminating his parental rights to the children pursuant to MCL 712A.19b(3)(b)(*ii*) and (c)(*i*). We affirm.

Respondent-father first argues that the statutory grounds for terminating his parental rights were not established by clear and convincing evidence. We review the trial court's factual findings that a ground for termination has been established for clear error. MCR 3.977(K); *In re Trejo Minors,* 462 Mich 341, 356–357; 612 NW2d 407 (2000). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Mason Minors,* 486 Mich 142, 152; 7782 NW2d 747 (2010).

In order to terminate respondent-father's parental rights, the trial court had to find that at least one of the statutory grounds for termination under MCL 712A.19b(3) had been established by clear and convincing evidence. *In re Trejo,* 462 Mich at 355. The trial court terminated respondent-father's parental rights under MCL 712A.19b(c)(*i*). Under factor (c)(*i*), the trial court may terminate a parent's rights if "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This statutory ground exists when the conditions that brought the children into foster care continue to exist despite "time to make changes and the opportunity to take advantage of a variety of services . . ." See *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000). A parent's failure to comply with the terms and

---

[1] Respondent-father's appeal pertains only to the termination of his parental rights to his biological child, AH, Jr.

conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home. MCL 712A.19a(5); see also *In re Trejo,* 462 Mich at 360-363.

Before a petitioner may seek termination of parental rights, the petitioner generally must make reasonable efforts to reunite parent and child. MCL 712A.19a(2); *In re Moss,* 301 Mich App 76, 90–91; 836 NW2d 182 (2013). Specifically, the petitioner must "make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried Minor,* 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4). But a petitioner's responsibility to provide services is matched by a respondent's attendant responsibility to take advantage of and benefit from services. *In re Frey,* 297 Mich App 242, 248; 824 NW2d 569 (2012).

Here, once DHHS was able to locate respondent-father in February 2015, approximately 4 months after AH was taken into care, it made reasonable efforts to reunify respondent-father with AH by putting in place services in the Flint area where he resided that were sufficiently tailored to address respondent-father's needs, which included housing, employment, substance abuse counseling, parenting classes, and emotional stability. *In re Hicks/Brown, Minors,* —— Mich App ——; —— NW2d —— (2016); slip op at 11, 15. DHHS provided gas cards to respondent-father to assist with transportation to Lansing to visit AH. The record does not support respondent-father's assertion that DHHS failed to make reasonable efforts to reunify respondent-father with AH. The only failures evidenced in the record are respondent's failure to maintain contact with the agency from April 2015 until October 2015, his failure to participate in parenting time with AH during the same time period, and failure to take full advantage of the services offered. At the time of the termination hearing, respondent-father had not visited with AH in 8 months and, at most, had completed a psychological evaluation and parenting class. The trial court did not clearly err in finding that clear and convincing evidence supported termination of respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*).

Because termination of a parent's rights need only be supported by a single statutory ground, *In re McIntyre,* 192 Mich App 47, 50; 480 NW2d 293 (1991), we need not consider respondent-father's argument with respect to the trial court's finding that termination was also warranted under MCL 712A.19b(3)(b)(*ii*).

Respondent-father also argues that termination of his parental rights was not in the best interests of AH. We review the trial court's factual finding that termination is in the children's best interests for clear error. MCR 3.977(K).

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the child's best interests before it can order termination of parental rights. MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss,* 301 Mich App at 90. When considering the child's best interests, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors,* 297 Mich App 35, 41–42; 823 NW2d 144 (2012).

The trial court did not clearly err in finding that the best interests of AH weighed in favor of him remaining in his foster care placement. The evidence showed that AH was making progress in foster care and that he needed stability which respondent-father could not provide. The lack of evidence regarding respondent-father's housing and employment situation was the result of his failure to maintain contact with the agency. He presented no documentation to the agency to demonstrate that he had obtained and maintained a legal source of income or that he had obtained suitable and appropriate housing. At the time of the termination hearing, respondent-father had not visited AH in 8 months and had made no inquiries regarding his well-being. Although respondent-father presented documentation indicating that he had completed a parenting class, his failure to visit AH prevented the agency from evaluating his parenting skills and determining whether he had benefited from the parenting class. Further, respondent-father's failure to comply with services indicated that termination was in AH's best interests. The evidence overwhelmingly shows that respondent-father failed to participate in any of the services offered except for the parenting class and a psychological evaluation and, even if transportation inhibited him from participating, the agency initially provided gas cards for transportation and later offered to provide bus passes for transportation. Respondent-father declined the offer of bus passes because he did not want to ride the bus. Further, there is no indication in the record that respondent-father took any measures to inform the agency that he wanted AH brought to Flint for visitation. In sum, there is far more than a preponderance of the evidence to suggest that termination was in the children's best interests; therefore, the trial court did not clearly err in so finding. *In re Moss,* 301 Mich App at 90.

Respondent-mother argues that the order terminating her parental rights must be conditionally reversed because the trial court failed to comply with the notice provisions of the Indian Child Welfare Act (ICWA),[2] 25 USC 1901 *et seq.* Because this issue is being raised for the first time on appeal, our review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MCR 3.965(B)(2) provides that at the preliminary hearing, "[t]he court must inquire if the child or either parent is a member of an Indian tribe." At the preliminary hearing in this case, the CPS worker testified that respondent-mother responded "no" when asked whether either of the children had American Indian heritage. The initial petition, under the section entitled "Race," identifies the children's race as "black." Respondent-mother later reported to foster care worker Marilyn Beardslee that her mother's side of the family was Cherokee Indian.[3]

In child protective proceedings, an "Indian child"[4] is afforded certain protections under the ICWA. In pertinent part, the ICWA requires that the relevant Indian tribe be notified by

---

[2] Certain protections are also afforded under the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* Respondent's argument is raised solely under the ICWA.

[3] Respondent-father also claimed that his mother was Cherokee Indian.

[4] An "Indian child" is defined by ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 USC 1903(4).

registered mail, return receipt requested, where there is "reason to know" that an Indian child may be involved in the child protective proceeding. 25 USC 1912(a). The "reason to know" standard has been held by the Michigan Supreme Court to "set a rather low bar" for triggering the notice requirement. *In re Morris,* 491 Mich 81, 105; 815 NW2d 62 (2012). In other words, "sufficiently reliable information of virtually any criteria on which membership might be based is adequate to trigger the notice requirement[.]" *Id.* at 108. The *Morris* Court indicated that "indicia sufficient to trigger tribal notice includes[, in part,] situations in which (1) the trial court has information suggesting that the child, a parent of the child, or members of a parent's family are tribal members, [or] (2) the trial court has information indicating that the child has Indian heritage, even though no particular Indian tribe can be identified [.]" *Id.* at 108 n 18. Importantly, "the mere triggering of the notice requirement does not strip the trial court of jurisdiction over the child[ ] and does not mandate automatic reversal of all proceedings occurring after the notice requirement was triggered." *Morris,* 491 Mich at 119. The proper remedy for a notice violation under ICWA "is to conditionally reverse the trial court and remand for resolution of the ICWA-notice issue." *Id.* at 89, 122.

There can be no question that the ICWA notice requirements were triggered in these proceedings when respondent-mother indicated to the case worker early on in these proceedings that she might have some family membership in the "Cherokee tribe." *In re Jones/Lehman, Minors,* ___ Mich App ___; ___ NW2wd ___ (2016), slip op at 4-5. DHHS has presented evidence that foster care worker Marilyn Beardslee sent family genealogy information provided by respondent-mother and respondent-father to the three Cherokee Tribes listed in the Federal Register for the Department of the Interior, Bureau of Indian Affairs[5] and that she received response letters from two of the three tribes, both denying Cherokee affiliation. Under these circumstances, petitioner complied with the notice requirements of the ICWA, and information received from the tribes before the termination hearing indicated that the children are not of Cherokee heritage. Thus, respondent-mother and AH would not have been entitled to the added protections set forth in the ICWA. Respondent-mother has failed to demonstrate the likelihood of a different result had the trial court placed a finding on the record in compliance with the ICWA before terminating parental rights. Therefore, we find no plain error, and respondent is not entitled to a conditional reversal of the termination order as requested.

Affirmed.


/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens

---

[5] The three tribes are the United Keetoowah Band of Cherokee Indians in Oklahoma, Cherokee Nation of Oklahoma, and Eastern Band of Cherokee Indians in Cherokee, NC.