[Cite as *In re A.G.*, 2019-Ohio-1345.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| In Re: A.G. | : | |
| | : | No. 107600 |
| A Minor Child | : | |
| | : | |
| [Appeal by Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 11, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-16900552

***Appearances:***

John H. Lawson, *for appellant.*

Michael C. O'Malley, Prosecuting Attorney, Cheryl Rice, and Colleen R. Cassidy Ulrich, Assistant Prosecuting Attorneys, *for appellee.*

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant-father, C.P. ("Father"), appeals from the decision of the Juvenile Division of the Cuyahoga County Court of Common Pleas ("the juvenile court") terminating his parental rights and granting permanent custody of his child,

A.G., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency").  Upon review, we affirm.

**Background**

{¶ 2}    Father and E.G. ("Mother") are the biological parents of A.G. (d.o.b. June 23, 2014).  It is undisputed that A.G. is an Indian child pursuant to 25 U.S.C. 1903, and that the provisions of the Indian Child Welfare Act ("ICWA"), 25 U.S.C. 1912 et seq., are implicated in this case.

{¶ 3}    The child came to the attention of the agency upon allegations that Mother and Father had attempted to sell A.G. to a relative.  Mother was convicted of attempted child endangering, and Father was convicted of disorderly conduct in connection with those allegations.

{¶ 4}    A.G. was first placed in the emergency predispositional custody of CCDCFS on May 6, 2015.  Because of various procedural reasons, successive complaints were filed, three of which were ultimately dismissed.  CCDCFS filed its fourth complaint on January 14, 2016, alleging that A.G. was abused and neglected, and requesting a disposition of temporary custody to the agency.

{¶ 5}    A.G. was adjudicated to be abused and neglected on April 14, 2016, and was committed to the temporary custody of the agency on May 16, 2016. Following two extensions of temporary custody being granted to the agency, Father

filed a motion for legal custody and CCDCFS filed a motion to modify temporary custody to permanent custody in April 2017.[1]

{¶ 6} The permanent custody hearing was held on June 18, 2018. A social worker on the case testified that A.G. had been in the custody of the agency for three years and that the agency had been working with the Ponca Tribe of Oklahoma since the inception of the case. A.G. had been placed in a foster home with her siblings and was significantly bonded with them.

{¶ 7} The social worker of record testified that a case plan was developed for the family. Mother had not completed any case plan services, which included substance abuse, mental health, parenting, stable housing, and meeting basic needs. The social worker testified to concerns of domestic violence between Mother and Father. She also testified that there was a period of over a year when Mother was not visiting, supporting, or communicating with the child. Additionally, she testified that there was an active warrant for Mother because of her failure to comply with the terms of probation relating to her conviction for attempted child endangering.

{¶ 8} The social worker testified to Father's case plan services. Although Father had completed parenting classes and was involved in the Fatherhood Initiative, he did not complete substance abuse treatment, which was ordered because of testing positive for cocaine at the commencement of the case. Also, Father was not cooperative with drug screens; he indicated in April 2018 that he

---

[1] Father also filed a motion for unsupervised visitation with A.G., which motion was denied by the trial court.

would test positive; and he had not demonstrated any significant period of sobriety. Although Father was consistent with visiting the child, he was often late to visits.

{¶ 9} Father failed to demonstrate that he had maintained stable housing or that he could provide for the child's basic needs. He had not advised the court of his new address and stated it was "temporary"; he did not file taxes or state how much he earned for his employment with a temporary agency; and he had not paid any support for A.G. during the time A.G. had been in the custody of the agency.

{¶ 10} The guardian ad litem for the child testified that Mother had not worked on her case plan, and that although Father had made efforts to work on parts of his case plan, he had failed to complete substance abuse treatment, had tested positive for cocaine and marijuana, and had repeatedly failed to take drug screens. The guardian ad litem recommended permanent custody to CCDCFS.

{¶ 11} Lanna Samaniego, the Executive Director of the North American Indian Cultural Center, was deemed to be a qualified ICWA expert witness and also testified in the matter. She testified that a maternal aunt who resides in Oklahoma and is affiliated with the Ponca Tribe was willing to take care of A.G. along with her siblings. She expressed the purpose of placement with Indian relatives is "[t]o make sure that they stay in touch with their culture, to reunify, to keep the families together, the Indian kids and Indian families." She recommended that the children be placed with their maternal aunt under an order of permanent custody to the agency. She testified that the ultimate goal is to keep A.G. and her siblings together.

**{¶ 12}** The juvenile court issued a journal entry on July 24, 2018, that denied Father's motion for legal custody, terminated all parental rights of Mother and Father, and awarded permanent custody of A.G. to CCDCFS. Father timely appealed.

**Law and Analysis**

**{¶ 13}** Father raises three assignments of error for our review. Under his first assignment of error, Father claims that the juvenile court lacked jurisdiction to hear the case because of a violation of due process under 25 U.S.C. 1911 and 25 U.S.C. 1912. He argues that proper service on the Ponca Tribe of Oklahoma was never perfected.

**{¶ 14}** The ICWA establishes certain procedural safeguards intended to govern child custody proceedings involving Indian children. *In re L.R.D.*, 8th Dist. Cuyahoga No. 107301, 2019-Ohio-178, ¶ 19. When there are sufficient indications that a child involved in child custody proceedings may be an Indian child, the ICWA requires that the tribe receive notice of the pending proceedings and of its right of intervention. 25 U.S.C. 1912(a).

**{¶ 15}** The notice provision of the ICWA provides as follows:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the

requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

25 U.S.C. 1912(a).

{¶ 16} In this case, it is not contested that an Indian child is involved. Pursuant to 25 U.S.C. 1912(a), notice was to be sent by "the party seeking the * * * termination of parental rights" to the parent or Indian custodian, and to the Indian child's tribe "by registered mail with return receipt requested[.]"

{¶ 17} Father argues that the summons was sent to the Ponca Tribe of Oklahoma by ordinary mail. However, at the permanent custody hearing, the court was informed that "the Agency did send certified mail notification to both the Ponca Tribe of Oklahoma and the Regional Office of Indian Affairs of Nashville." It was represented that the green card was returned from the Office of Indian Affairs, and that although "the green card did not come back for the Ponca Tribe[,]" confirmation of delivery had been printed out from the United States Postal Service website and was available for the court and the parties' viewing. No party expressed any desire to view the printout. The court asked if the parties were in agreement that notification had been completed, and Father's counsel stated Father was "in agreement."

{¶ 18} Insofar as it was represented that the notice was sent by certified mail, Father argues that the notice must be sent by "registered mail." However, "[i]n 2016,

the Bureau of Indian Affairs (BIA) issued regulations and new guidelines clarifying ICWA's notice requirements." *People ex rel. M.V.*, 2018 COA 163, 432 P.3d 628, ¶ 27 (Colo.App.2018), citing *Indian Child Welfare Act Proceedings*, 81 Fed. Reg. 38,778 (June 14, 2016); *BIA Guidelines for Implementing the Indian Child Welfare Act* (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines). Pursuant to the regulations pertaining to the notice requirements for a child-custody proceeding involving an Indian child, notice may be sent by "registered or certified mail with return receipt requested." 25 C.F.R. 23.111(c); *see also Indian Child Welfare Act Proceedings*, 81 Fed. Reg. at 38, 810-38811 (June 14, 2016).

{¶ 19} Father also argues that the proof of service documents were not made a part of the record. To this end, the federal regulations instruct courts to ensure compliance with ICWA notice requirement and to make a documentary record of the notice that was given as well as proof of service. 25 C.F.R. 23.111(a). Additionally, 25 C.F.R. 23.111(c) provides a list of items that are to be included in the notice. Although a documentary record was not made in this case, the record supports a reasonable inference that the tribe received actual notice of the proceedings and the right to intervene. There was testimony that the agency had been working with the Ponca Tribe of Oklahoma since the inception of the case and the agency was still maintaining contact with the tribe at the time of the permanent custody hearing. Under the circumstances of this case, we find the record sufficient to establish compliance with the ICWA notice requirements.

{¶ 20} Finally, although Father cites to a couple of cases that have held otherwise, we concur with the jurisdictions that have held a juvenile court's asserted lack of compliance with ICWA's notice provisions under 25 U.S.C. 1912(a) does not divest it of subject matter jurisdiction to enter the adjudicatory and dispositional orders. *People ex rel. M.V.* at ¶ 9-19; *In re Morris*, 491 Mich. 81, 815 N.W.2d 62 (Mich.2012).

> Significantly, the remedy that Congress has provided for a failure to comply with ICWA's provisions, including its notice provisions, is to allow an Indian child, parent, or tribe to petition to invalidate the termination judgment. 25 U.S.C. § 1914 (2018). But, the remedy does not void the court's subject matter jurisdiction.

*People ex rel. M.V.* at ¶ 13. Nonetheless, we have not found any lack of compliance in this matter.

{¶ 21} Father's first assignment of error is overruled.

{¶ 22} Under his second assignment of error, Father claims the trial court failed to make the requisite findings mandated by 25 U.S.C. 1912(f), which provides as follows:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

{¶ 23} Lanna Samaniego, who was deemed a qualified ICWA expert witness, testified in the matter. When specifically asked about concerns regarding the safety of A.G., Ms. Samaniego testified that neither parent had completed or followed through on their case plans. When asked whether A.G. would suffer emotional or

physical damage if returned to the parents, Ms. Samaniego testified that she would not place the child with her parents. Father argues that this testimony fell short of proving that A.G. is likely to suffer serious emotional and physical harm if returned to Father's care. Father's argument fails to account for other evidence in the case.

{¶ 24} The ICWA does not require that the subject finding be established solely from the expert's testimony. *E.A. v. Div. of Family & Youth Servs.*, 46 P.3d 986, 992 (Alaska 2002). Rather, the finding "may be proved through the testimony of one or more expert witnesses, or by aggregating the testimony of lay and expert witnesses." *Demetria H. v. State*, 433 P.3d 1064 (Alaska 2018).

{¶ 25} The evidence before the court established that the children had be in the custody of the agency, in some form, for three years and that the parents had not substantially completed their case plans during that time. During this time, A.G. was placed in a foster home with her siblings, with whom she was bonded. Substance abuse remained a concern for Father, who was not cooperative with case plan services and failed to demonstrate any period of sobriety. Also, he had not demonstrated that he had maintained stable housing or that he could provide for the child's basic needs. The evidence in this matter, which included the testimony of a qualified expert witness and the social worker of record, constituted a sufficient basis for it to find "beyond a reasonable doubt that the continued custody of the parents would likely result in serious physical or emotional damage to the child."

{¶ 26} We also note that Father has not challenged the trial court's findings under R.C. 2151.414. Nonetheless, our review of the record shows that the trial

court's decision to terminate parental rights and to grant permanent custody to the agency was supported by competent, credible evidence in the record. Father's second assignment of error is overruled.

{¶ 27} Under his third assignment of error, Father claims that the trial court failed to adopt the agency's case plan as required by R.C. 2151.412(E). The magistrate's decision issued on April 26, 2016, to which appellant refers, specifically states that "[t]he case plan filed herein is approved." Also, a review of the record reflects that the case plan was approved and adopted by the trial court in a journal entry issued on May 16, 2016, in which the child was committed to the temporary custody of CCDCFS. It was again approved in later journal entries from the court. The record does not support appellant's argument. Appellant's third assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR