*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. TILLMAN, Minor.

UNPUBLISHED
August 11, 2022

No. 359060
Livingston Circuit Court
Family Division
LC No. 16-015319-NA

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor child, RT, under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions) and (h) (parent is imprisoned for such a period that the child would be deprived of a normal home for more than two years). While raising three issues on appeal, respondent does not challenge whether the evidence supported the statutory grounds for termination or whether termination was in RT's best interests. Finding no prejudicial error in the proceedings below with respect to the issues raised by respondent, we affirm.

## I. RELEVANT BACKGROUND FACTS AND PROCEDURAL HISTORY

When RT was born on March 21, 2018, his mother was legally married to an out-of-state resident, Bradley Ezekiel. RT's mother had been living with, and romantically involved with, respondent until her incarceration in February 2018 with the Michigan Department of Corrections.[1] The Department of Health and Human Services (DHHS) filed a petition requesting the removal of RT from the home. The petition noted that Ezekiel was RT's legal father and that he resided in Alabama. The referee ordered that RT be taken into protective custody and placed with DHHS for care and supervision. At the preliminary hearing on the petition, respondent claimed to be RT's biological father. A Children's Protective Services worker said that Ezekiel informed her that he had not seen RT's mother in three years and that he could not be RT's biological father. The referee adjourned the preliminary hearing after granting respondent's motion to intervene and

---

[1] The trial court also terminated the parental rights of RT's mother. RT's mother is not a party to this appeal, and the term "respondent" as used in this opinion refers only to respondent-father.

authorizing the filing of a motion to determine that RT was born out of wedlock. At the June 13, 2018 hearing on the motion, the parties stipulated to admission of a DNA test report indicating that there was a 99.9999% probability that respondent is RT's biological father. The trial court entered an order the same day adopting the referee's finding that RT was born out of wedlock and judicially determining respondent to be RT's legal father. At the same hearing, RT's mother admitted certain allegations in the petition, and the referee found statutory grounds to exercise jurisdiction over RT. The referee placed RT with DHHS for care and supervision.

On June 14, 2018, DHHS filed a supplemental petition that identified respondent as RT's father and sought removal of RT. The referee entered an ex parte order removing RT from the home. Respondent subsequently waived probable cause at the preliminary hearing and the referee authorized the petition. The referee found that it was contrary to RT's welfare to remain in the home because of ongoing concerns regarding substance abuse, mental health, and emotional instability that posed a risk of harm to the physical and emotional well-being of RT. On the second day of a bench trial regarding jurisdiction with respect to respondent, respondent was incarcerated in the Livingston County jail. He entered a plea of no contest to paragraph N of an August 10, 2018 amended petition that contained specific allegations related to respondent's continued pattern of criminality, drug use, and instability. The referee accepted respondent's plea and took jurisdiction over RT. In May 2019, respondent was sentenced to prison with an earliest release date of February 14, 2025.

On May 19, 2020, RT was returned to his mother's care. On June 19, 2020, DHHS filed a supplemental petition seeking removal of RT after, among other things, his mother tested positive for fentanyl. The petition sought termination of both RT's mother's and respondent's parental rights. After a termination hearing, the trial court found statutory grounds to terminate respondent's parental rights and found that it was in the best interests of RT that respondent's parental rights be terminated.

## II. PROCEDURAL DUE PROCESS

Respondent did not raise a due-process argument in the trial court and, therefore, this issue is not preserved. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020) (citation and quotation marks omitted). "This Court reviews a trial court's factual determinations for clear error." *Id*. "Clear error requires that the reviewing court be left with a firm and definite conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "Even if an error occurred, this Court will not disturb the trial court's order unless it would be inconsistent with substantial justice to permit the order to stand." *Id*. (quotation marks and citations omitted).

However, this Court reviews unpreserved claims of error arising out of child protective proceedings for plain error. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citation omitted). An error affects

substantial rights when it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (cleaned up).

DHHS, after conducting a preliminary investigation regarding suspected child abuse or neglect, may petition the family division of the circuit court to take jurisdiction over the child. See MCR 3.961(A). That petition must contain, among other things, "[t]he essential facts" that, if proven, would allow the trial court to assume jurisdiction over the child. MCR 3.961(B)(3); see also MCL 712A.2(b). Respondent argues that he was denied due process by DHHS's failure to conduct an investigation before filing the June 14, 2018 supplemental petition. The factual allegations in the June 14, 2018 supplemental petition, however, belie respondent's argument that DHHS failed to conduct an investigation before filing the supplemental petition. The supplemental petition contained specific allegations with respect to respondent. The petition alleged that respondent had previously been added in the ongoing child protective proceedings involving RT's mother's other children and that he had been identified in those proceedings as having barriers to safely co-parenting those children. Respondent had been given the opportunity to drug screen and refused, and he refused to engage and communicate with the foster care worker in that case. Respondent had a history of substance abuse and was receiving methadone treatments, but refused to sign a release so that the foster care worker could obtain his medical history. Respondent lived with his father, who had a known drug problem and criminal history, and the police had conducted a drug raid on the home in 2016. Respondent had a lengthy criminal history which involved convictions of felony possession of controlled substances, breaking and entering, larceny, carrying a concealed weapon, disturbing the peace, operating while license suspended, operating with false identification, and obstruction by disguise. He demonstrated low impulse control, anger, and inappropriate outbursts during RT's mother's child protective proceedings and during proceedings related to this case. All of these facts were alleged in the supplemental petition and show that DHHS conducted a thorough investigation of the case before filing that petition.

Respondent also argues that he was denied due process because DHHS did not make reasonable efforts to prevent removal. Specifically, he contends that DHHS failed to provide an opportunity for respondent to place RT with a member of his family through a power of attorney because the supplemental petition was filed one day after respondent was determined to be RT's legal father. DHHS filed the supplemental petition on June 14, 2018. The preliminary hearing on the petition commenced on June 15, 2018, and was continued to June 28, 2018. The record does not reveal, nor has respondent presented evidence, that he sought to place RT with a member of his family through a power of attorney between the time the supplemental petition was filed on June 14 and when respondent waived probable cause and entered a plea on June 28. Additionally, during the preliminary hearing, counsel for DHHS informed the referee that the foster care worker was already working closely with respondent and his family to investigate the options for relative placement.[2] Defendant has failed to demonstrate any error, much less plain error, with regard to his due-process arguments.

---

[2] We note that the record reveals that DHHS began investigating potential relative placement before RT was born and continued to do so throughout the case, but no appropriate relative placement was found.

III. INDIAN CHILD WELFARE ACT (ICWA) AND MICHIGAN INDIAN FAMILY PRESERVATION ACT (MIFPA)

Respondent contends that conditional reversal and remand to the trial court for a conclusive determination of RT's Indian status is necessary because the trial court record does not contain sufficient documentation to demonstrate that the notice requirements of the ICWA, 25 USC 1901 *et seq.*, and the MIFPA, MCL 712B.1 *et seq.*, were satisfied. We disagree.

The application and interpretation of the ICWA and the MIFPA involve questions of law that this Court reviews de novo. *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012); *In re Detmer/Beaudry*, 321 Mich App 49, 59; 910 NW2d 318 (2017). This Court reviews the trial court's factual findings for clear error, which occurs if this Court has a definite and firm conviction that the trial court made a mistake. *In re England*, 314 Mich App 245, 254; 887 NW2d 10 (2016).

Both the ICWA and the MIFPA were enacted to protect, preserve, and promote the security and stability of Indian families, tribes, and tribal culture. *Id.* at 250-251. Toward those goals, the notice provisions of the ICWA and MIFPA generally require that a tribe be notified of child custody proceedings "when there are sufficient indications that the child may be an Indian child." *Morris*, 491 Mich at 100. When a child's tribe cannot be determined, the Bureau of Indian Affairs (BIA) must be notified. *Id.* at 124. Specifically, the ICWA provides, in relevant part:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. . . . [25 USC 1912(a).]

Similarly, the MIFPA provides, in relevant part:

> In a child custody proceeding, if the court knows or has reason to know that an Indian child is involved, the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to intervene. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the secretary in the same manner described in this subsection. The secretary has 15 days after receipt of notice to provide the requisite notice to the parent or Indian custodian and the tribe. [MCL 712B.9(1).]

Further, MCL 712B.9(3) requires DHHS to investigate whether a child is an Indian child:

> The department shall actively seek to determine whether a child at initial contact is an Indian child. If the department is able to make an initial determination as to which Indian tribe or tribes a child brought to its attention may be a member, the department shall exercise due diligence to contact the Indian tribe or tribes in

writing so that the tribe may verify membership or eligibility for membership. If the department is unable to make an initial determination as to which tribe or tribes a child may be a member, the department shall, at a minimum, contact in writing the tribe or tribes located in the county where the child is located and the secretary.

In *Morris*, our Supreme Court held that the trial court is charged with certain recordkeeping tasks under 25 USC 1912(a). The Court stated:

[T]rial courts have a duty to ensure that the record includes, at minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail pursuant to 25 USC 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice. In addition, it would be helpful—especially for appellate purposes—for the record to include any additional correspondence between the petitioner, the court, and the Indian tribe or other person or entity entitled to notice under 25 USC 1912(a). [*Morris*, 491 Mich at 114.]

When the trial court record does not demonstrate compliance with the notice provisions, the remedy is to conditionally reverse the trial court and remand for resolution of the matter. *Id*. at 122.

The foster care worker testified that she contacted the BIA, which identified three tribes to which notice should be sent: the Shawnee, Chickahominy, and Cherokee tribes. Respondent's mother also provided the names of potential tribes. The record includes documentation of tribal responses from the Shawnee tribe, the Chickahominy tribe, the Cherokee tribe, The Eastern Band of Cherokee Indians tribe, the Pamunkey tribe, the Eastern Shawnee tribe of Oklahoma, the Cherokee National tribe, and the United Keetowah Band of Cherokee Indians tribe, each indicating that RT was neither a member of nor eligible for membership in any of the tribes. The record also contains a copy of the signed return receipt for the notice sent to the Upper Mattaponi tribe. Thus, the record sufficiently supports that adequate notice was provided under the ICWA and the MIFPA.[3]

---

[3] Respondent maintains that DHHS failed to notify "the one tribe the foster care worker should have identified, the tribe in the county where the child is located, . . . Huron Potawatomi/Notawaseppi Huron Band of Potawatomi (Calhoun) Allegan, Barry, Branch, Calhoun, Kalamazoo, Kent, Ottawa." However, RT was located in Livingston County. Further, respondent makes no argument on appeal and provides no evidence that RT was, in fact, eligible for membership in the tribe. This argument is abandoned. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

IV. RIGHT TO COURT REVIEW OF REFEREE'S RECOMMENDED FINDINGS AND
CONCLUSIONS

Respondent argues that the referee failed to advise him that appellate review of the initial order of disposition was available as required by MCR 3.973(G)(2).[4] This unpreserved claim of error is reviewed for plain error. *Pederson*, 331 Mich App at 463.

MCR 3.973 was amended in 2019 to require the trial court to advise parents that they have an appeal of right from the initial dispositional order and that if they did not challenge the adjudication at that point, they would not be able to challenge it after their parental rights were terminated with two exceptions, one of which is that the court failed to properly advise the respondent of their right to appeal pursuant to MCR 3.973(G)(2) through (4). See MCR 3.973(H). In this case, the record supports respondent's argument that the referee did not advise respondent, orally or in writing, that appellate review was available to challenge the initial order of disposition. Therefore, under MCR 3.973(H), respondent may challenge the assumption of jurisdiction in an appeal of right from the order terminating his parental rights. However, respondent has not raised a challenge to the assumption of jurisdiction in this appeal. As such, his substantial rights were therefore not affected by the error.

Respondent also argues that the referee failed to advise him of the right under MCR 3.913(C) to request judicial review of the referee's recommended findings and conclusions. This unpreserved claim of error is reviewed for plain error. *Pederson*, 331 Mich App at 463.

A court may assign a referee to preside over certain hearings in child protective proceedings. See MCR 3.913(A)(1). Under MCR 3.913(C), "the referee must inform the parties of the right to file a request for review of the referee's recommended findings and conclusions as provided in MCR 3.991(B)." MCR 3.991 provides for judicial review of the referee's recommendations. "The judge must enter an order adopting the referee's recommendation unless . . . the judge would have reached a different result had he or she heard the case." MCR 3.991(E)(1).

The record reveals that the referee did not advise respondent of his right to have the referee's findings reviewed at any of the hearings over which the referee presided.[5] Respondent argues that the referee's failure violated his due-process right to determine his future with his child and requires reversal of the order of termination so that he can "voice his objections to the referee's orders in every future hearing." However, procedural errors can be considered harmless if they do not affect the fundamental fairness of the proceedings or the outcome of the case. See *In re AMB*, 248 Mich App 144, 235; 640 NW2d 262 (2001); see also MCR 2.613(A). Respondent contends that if he had known about the right of review, he would have been able to obtain rulings from the judge regarding Indian heritage and the purported lack of time he was provided to place RT with

---

[4] MCR 3.973(G) provides: "When the court enters an initial order of disposition following adjudication the court shall advise the respondent orally or in writing . . . (2) that appellate review is available to challenge the court's initial order of disposition."

[5] The circuit court judge presided over respondent's adjudication trial and the termination hearing.

a family member. Both of these contentions are belied by the record, as previously discussed, and it is clear that the judge would not have reached a different result. Further, respondent does not challenge the trial court's findings that there was sufficient evidence to terminate respondent's parental rights and that it was in the best interests of the child to terminate respondent's parental rights. Accordingly, respondent has failed to show that he was prejudiced by the referee's failure to comply with MCR 3.913(C). See *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica