*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. C. BRADFORD, Minor.

UNPUBLISHED
October 20, 2022

No. 360884
Wayne Circuit Court
Family Division
LC No. 2017-001358-NA

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her child, CB, under MCL 712A.19b(3)(a)(*i*) (child abandoned and parent unidentifiable),[1] (a)(*ii*) (desertion for 91 or more days without seeking custody), (c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide care and custody), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

## I. BACKGROUND

In early February 2021, Children's Protective Services (CPS) specialist Mariah Taylor filed a petition for temporary wardship on behalf of petitioner, the Michigan Department of Health and Human Services (MDHHS). The petition requested that the trial court take jurisdiction over CB and make him a temporary court ward. The petition stated that CB had no legal father, but he had at least two putative fathers. It also alleged that it was contrary to the welfare of CB to live in respondent's home because of her substance abuse issues, untreated mental health issues, and

---

[1] There is some ambiguity regarding whether MCL 712A.19b(3)(a)(*i*) applied to respondent or CB's biological father. Although the supplemental petition and the order terminating respondent's parental rights listed MCL 712A.19b(3)(a)(*i*) as an applicable statutory ground, the referee's statements on the record were unclear on whether this statutory ground applied to respondent, or just CB's biological father, whose parental rights to CB were also terminated. CB's biological father is not at issue in this appeal. We will address the issue regarding MCL 712A.19b(3)(a)(*i*) below.

improper supervision. Specifically, it alleged that in mid-December 2020, she left CB in the care of her cousin. At some point, respondent saw that CB "appeared groggy" and "his eyes were dilated." When respondent asked CB if he was okay, "he stated he was okay, but that [respondent's cousin] hit him." It also alleged that respondent allowed CB to return to her cousin's care after this incident, despite knowledge of the incident and the fact that her cousin's boyfriend "use[d] [controlled] substances . . . ." The petition alleged that on Christmas Eve in 2020, CB fell down the stairs and was taken to the hospital. It asserted that, about a week later, CPS received information from the hospital that treated CB on Christmas Eve that CB tested positive for cocaine. The petition alleged that respondent tested positive for cocaine and tetrahydrocannabinol (THC) in early January 2020. And it alleged that CB was previously removed from respondent's care in 2017 because of her untreated mental health and substance abuse issues. Following a preliminary hearing, the trial court authorized the petition, and placed CB with MDHHS.[2]

MDHHS later filed an amended petition for temporary wardship. The amended petition added new allegations, including that respondent admitted to using cocaine. It appears that at the time she used cocaine, respondent was crying and had CB in her lap. She believed that CB may have ingested cocaine after he wiped respondent's face when she was crying. Following a hearing, the court ordered that CB be made a temporary court ward and it took jurisdiction over him.

MDHHS placed CB in foster care, and the court granted respondent supervised visitation. After respondent failed to visit CB or complete services over the course of several months, MDHHS filed a supplemental petition for permanent custody. The petition requested the termination of respondent's parental rights to CB under MCL 712A.19b(3)(a)(*i*), (a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j). The petition alleged that the court ordered respondent to comply with a treatment plan and required her to complete several services, but she failed to do so.

---

[2] At the preliminary hearing in February 2021, respondent expressed a belief that she may be registered with the Cherokee Indian Tribe. The preliminary hearing was adjourned at least two times because of this potential issue with the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*. At a continuation of the preliminary hearing, MDHHS apparently presented documents to the trial court demonstrating that it had sent the required notices to the relevant tribes but had not received a response from any of the three tribes. As far as we can tell, these documents are not in the lower court record. When asked at the continued preliminary hearing whether she wished to address any ICWA issues, respondent's attorney stated, "No, I'm satisfied." Thereafter, the trial court found that MDHHS had complied with the ICWA notice requirements and that, as of the preliminary hearing, "no Tribe has confirmed that the child in this matter, in fact, is an Indian child. Therefore, the matter will go forward." The parties do not raise any issue regarding ICWA. It, therefore, is unnecessary for this Court to address the adequacy of the trial court's findings or how its findings affect the trial court's order terminating respondent's parental rights. See *In re Morris*, 491 Mich 81, 123; 815 NW2d 62 (2012) (remanding to the trial court and stating that if the court conclusively determines that ICWA did not apply because either the children are not Indian children or because "the properly noticed tribes do not respond within the allotted time," the trial court's order terminating parental rights would be reinstated).

Following a hearing on MDHHS's supplemental petition for termination, the court found that, because of respondent's failure to comply with her service plan, there were statutory grounds to terminate her parental rights under MCL 712A.19b(3)(a)(*i*), (a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j).[3] The court highlighted the testimony of Abigail Camann, a foster care supervisor, who stated that respondent claimed that she had done nothing wrong. The court noted that respondent "hasn't done anything" with regard to reunification. The court also noted that respondent had only participated in one visit since June 2021. The court stated that CB needed permanency, and had been in foster care multiple times despite being only four years old. The court found that respondent did not have suitable housing, and she had no reported source of income.

The court also found that it was in CB's best interests to terminate respondent's parental rights. The court noted that respondent's bond with CB had diminished and that respondent failed to recognize the issues that brought CB into care. The court found that CB was doing well in a pre-adoptive home, his needs were being met, and he had stability. It then entered an order terminating respondent's parental rights. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710. "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). This Court must give "due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

This Court reviews a trial court's decision regarding best interests for clear error. *In re Keillor*, 325 Mich App at 93. "Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *Id*. (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

Respondent argues that the trial court clearly erred when it determined that MDHHS presented clear and convincing evidence supporting termination of her parental rights under MCL 712A.19b(3)(a)(*i*), (a)(*ii*), (c)(*i*), (c)(*ii*), (g) and (j), and when it found that termination was in CB's best interests. We agree in part, disagree in part.

---

[3] The trial court also found statutory grounds to terminate the father of CB's parental rights because no man had come forward to establish paternity for CB, and the father's identity could not be ascertained. Further, the trial court found that termination of the father of CB's parental rights was in CB's best interests. As noted earlier, CB's father is not a party to this appeal.

## A. STATUTORY GROUNDS

### 1. THE TRIAL COURT CLEARLY ERRED IN TERMINATING RESPONDENT'S PARENTAL RIGHTS UNDER MCL 712A.19B(3)(A)(*I*) AND (G)

Respondent argues that the trial court clearly erred when it terminated her parental rights to CB under MCL 712A.19b(3)(a)(*i*). It is somewhat unclear whether the trial court applied MCL 712A.19b(3)(a)(*i*) to both respondent and CB's biological father. But to the extent it applied this statutory ground to respondent, we agree with respondent.

A trial court may terminate parental rights under MCL 712A.19b(3)(a)(*i*) if it finds by clear and convincing evidence that

> (a) The child has been deserted under either of the following circumstances:
>
> (*i*) The child's parent is unidentifiable, has deserted the child for 28 or more days, and has not sought custody of the child during that period. For the purposes of this section, a parent is unidentifiable if the parent's identity cannot be ascertained after reasonable efforts have been made to locate and identify the parent.

Respondent, CB's mother, is identifiable, and her identity is known. There is no indication in the record that respondent was ever unidentifiable. This statutory ground, therefore, plainly does not apply to respondent. Accordingly, the trial court clearly erred to the extent it terminated respondent's parental rights under MCL 712A.19b(3)(a)(*i*).

Respondent also argues that the trial court clearly erred when it terminated her parental rights to CB under MCL 712A.19b(3)(g). We agree.

A trial court may terminate parental rights under MCL 712A.19b(3)(g) if it finds by clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

The trial court did not make an explicit finding with respect to the requirement in MCL 712A.19b(3)(g) that respondent, though financially able to do so, failed to provide proper care or custody for CB. It did, however, find that respondent did not have suitable housing or a source of income at the time of the termination hearing. The evidence presented demonstrated that respondent was not financially able to provide proper care and custody for CB. Although respondent informed Camann that she was starting a business, she did not provide any verification of this business or proof of income at the time of the termination hearing. Respondent stated that she had been homeless for a period of time in 2021. Respondent also stated that she started a cleaning business in September 2021, but she became sick after this date. It is unclear whether respondent had a source of income at the time of the termination hearing. Camann also testified that she did not believe that respondent received any public welfare assistance. Accordingly, the

trial court clearly erred when it concluded that termination of respondent's parental rights was justified under MCL 712A.19b(3)(g).

Nevertheless, only one statutory ground must be established to support the termination of parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). As will be discussed below, because the trial court did not clearly err by finding that termination of respondent's parental rights was justified under other statutory grounds, any error committed by the trial court as it relates to MCL 712A.19b(3)(a)(*i*) and (g) was harmless.

## 2. THE TRIAL COURT DID NOT CLEARLY ERR IN TERMINATING RESPONDENT'S PARENTAL RIGHTS UNDER MCL 712A.19B(3)(C)(*I*)

Respondent argues that the trial court clearly erred in determining that MDHHS presented clear and convincing evidence to support the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). We disagree.

A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist despite the time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re White*, 303 Mich App at 710 (quotation marks and citation omitted).

The trial court did not clearly err when it determined that MDHHS had presented clear and convincing evidence supporting termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). The trial court entered an initial dispositional order on July 9, 2021. The trial court ordered respondent to complete and benefit from services, including parenting classes or infant mental health services, a substance abuse assessment, and substance abuse services. She was also ordered to complete weekly random drug screens, individual therapy, psychological and psychiatric evaluations (if recommended), and a parent-partner service. The court also ordered that respondent maintain suitable housing, maintain a legal source of income, maintain contact with the MDHHS worker, and attend all court hearings. The February 2021 petition for temporary wardship alleged that "respondent's substance abuse and improper supervision affects her ability to properly parent" CB, who was previously removed from respondent's care in 2017 because of her substance abuse and untreated mental health issues. The February 2021 petition also alleged that it was contrary to the welfare of CB to live in respondent's home because of her substance abuse and untreated mental health issues, and improper supervision. More than eight months—more than the required 182 days under MCL 712A.19b(3)(c)(*i*)—passed between July 9, 2021, and the termination hearing on March 17, 2022. And at the time of the termination hearing,

respondent had failed to comply with all aspects of her treatment plan. She did not have suitable housing at that time, did not provide proof of income, lost contact with foster care workers for long periods of time, and was terminated from all services. She also failed to resolve the issues that led to CB's removal from her care. It is, therefore, clear that the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

Regarding respondent's substance abuse, Camann stated that respondent was referred for substance abuse services on two occasions. Respondent never attended those services. When Camann asked why she did not attend those services, respondent stated that she did not have a substance abuse problem. Taylor Holmes, another foster care worker assigned to CB's case, testified that respondent had not completed any drug screens as of February 3, 2022, and her therapy, which included a substance abuse component, was in the process of being terminated.

Regarding respondent's untreated mental health issues, Camann stated that referrals were provided for individual counseling on July 19, 2021, and January 5, 2022, but respondent never enrolled in those services. Although respondent reported that she planned to contact a service provider for mental health services, she had not provided any documentation of these services. Respondent also had not provided Camann with information regarding prescribed medications she was taking, if any. Additionally, respondent failed to complete a psychological evaluation despite multiple referrals. Her failure to treat her mental health conditions is notable given that she had previously been diagnosed with anxiety, depression, and schizophrenia.

Respondent also failed to resolve the issues related to her improper supervision of CB. She failed to complete parenting classes despite three referrals made for those classes. Respondent also acted inappropriately with CB during some of the supervised visits. She spoke about the termination case with CB and yelled at a foster care worker in front of CB. Respondent was also inconsistent with her visitation with CB. Specifically, from the beginning of the case until June 2021, missed 20% of her possible visits. But between June 2, 2021, and March 9, 2022, she did not visit CB at all. Her failure to attend parenting classes, her inappropriate behavior in front of CB, and her failure to consistently visit CB demonstrate that the trial court did not clearly err in determining that termination was appropriate under MCL 712A.19b(3)(c)(*i*).

For these reasons, the trial court did not clearly err in determining by clear and convincing evidence that the conditions that led to the adjudication continued to exist at the time of the termination hearing. Nor did the trial court err when it found by clear and convincing evidence that there was no reasonable likelihood that the conditions will be rectified within a reasonable time considering the CB's age.[4]

---

[4] Respondent also argues on appeal that the trial court clearly erred in terminating her parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*ii*), and (j). As noted earlier, however, only one statutory ground need be established to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App at 32. Given our conclusion that the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*), we need not address these remaining statutory

## B. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred when it determined that termination of her parental rights was in CB's best interests. We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713 (citation omitted). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714 (citation omitted). A parent's mental health is also relevant to whether termination is in the child's best interests. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). "The focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks, citation, and alteration omitted).

The trial court did not clearly err in finding that termination was in CB's best interests. Regarding the bond between respondent and CB, the trial court found that respondent's "lack of visitation for over 6 months has diminished any bond that she and [CB] once had." Camann stated that there was evidence of a bond between respondent and CB before June 2021. Between June 2021 and March 2022, however, respondent did not visit CB. Camann indicated that when visits restarted in early March 2022, there seemed to be "less of a bond" between respondent and CB. Accordingly, the factor related to respondent's bond with CB weighs in favor of termination.

Regarding respondent's parenting ability, there was testimony that respondent admitted in June 2021 that she wanted to release her parental rights to CB. Respondent also failed to contact the foster care agency between June 2021 and October 2021. Respondent demonstrated little or no desire to improve her parenting ability because she informed Camann that she would not participate in services, and claimed that she had done nothing wrong. Further, respondent's inappropriate behavior during visits and in CB's presence casts doubt on her parenting ability. Respondent talked about the foster care case, and yelled at a foster care worker, in front of CB. Respondent's improper supervision of CB also led to CB falling down the stairs and being exposed to cocaine. She also failed to complete services to rectify her parenting issues. Accordingly, the factor regarding respondent's parenting ability weighs in favor of termination.

The factor regarding respondent's visitation history also weighs in favor of termination. From the beginning of the case until June 2021, respondent attended 44 out of a possible 55 visits with CB. Between June 2, 2021, and March 9, 2022, however, respondent did not visit CB. Camann stated that the visits were generally appropriate. As noted earlier, however, respondent

---

grounds. Even so, after review, we are convinced that the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*ii*), or (j).

talked about the case, and yelled at a foster care worker, in front of CB during visits. In addition, Camann indicated that there appeared to be "less of a bond" between respondent and CB when visits restarted in early March 2022. This was likely the result of respondent's failure to visit CB between June 2021 and March 2022. Thus, this factor weighs in favor of termination of respondent's parental rights.

CB's need for permanence and stability also weighs in favor of termination. Camann noted that CB needed permanency, and he had been placed in foster care for one year at the time of the termination hearing. Camann stated that CB appeared to be bonded to his foster parents, and his needs were being met in his foster home, which was a pre-adoptive home. Conversely, respondent did not have suitable housing and did not provide proof of a source of income at the time of the termination hearing. Respondent's inconsistent visitation with CB, his 2017 removal from respondent's care as a result of her drug use and untreated mental illness, and her failure to rectify her substance abuse issues or complete services all demonstrate that CB would not receive permanency and stability in respondent's care, and would be at a high risk of removal from her care in the future. Accordingly, CB's need for permanence and stability weighs in favor of termination.

Finally, the factor regarding respondent's mental health weighs in favor of termination. CB was removed from respondent's care in 2017, in part, because of her untreated mental health issues. Respondent admitted to a history of untreated mental health issues, and was previously diagnosed with anxiety, depression, and schizophrenia. Respondent informed Taylor that she had contacted a mental health service provider to enroll in services, but respondent did not complete these services. When asked whether respondent ever admitted to her that she was taking any medication to address her mental health diagnoses, Taylor said, "No." Despite her prior diagnoses, respondent informed Camann that she did not have any mental health problems and would not participate in services. Camann testified that, at the time of the termination hearing, respondent had failed to enroll in services for individual counseling, had not provided her any information regarding prescribed medications, and had never completed a psychological evaluation. Thus, respondent seemingly took no steps to rectify her mental health issues despite the February 2021 petition noting that it was contrary to CB's welfare to live in respondent's home, in part, because of her untreated mental health issues. Accordingly, the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in CB's best interests.

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood

-8-