*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. AHANU, Minor.

UNPUBLISHED
June 20, 2025
10:17 AM

No. 372472
Jackson Circuit Court
Family Division
LC No. 20-002157-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(c) (failure to rectify barriers to reunification), (g) (failure to provide proper care and custody), and (j) (child will be harmed if returned to the parent). On appeal, respondent argues that the trial court erred by failing to conduct a proper inquiry into her claim that she and the child have Indian heritage. We conditionally reverse and remand.

## I. FACTS

In July 2023, a petition was filed to remove the newborn child from respondent's care because of respondent's significant mental-health issues and extensive history with Children's Protective Services. Previously, respondent had her parental rights terminated to three of her children.

At the beginning of the preliminary hearing on the petition, the trial court asked respondent, "[C]an you tell me, do either of the children have any Native American Indian heritage?" Respondent affirmed, stating, "Yes, they do as a matter of fact." The trial court responded, asking, "What can you tell me about that?" Respondent stated that "[i]t's in their bloodline" from her side. When the trial court asked respondent whether she knew what tribe or band, respondent stated, "Cherokee." The trial court then stated: "We've had a prior case, and I had written possible Native American Indian heritage on mom's side, and then the Agency verified that there was none." Respondent replied, "Yes ma'am." Respondent then pleaded no-contest to the allegations in the petition.

-1-

After a petition to terminate her parental rights was filed, the trial court held a termination trial. During her testimony respondent remarked that she felt "like [her] rights were illegally terminated [for other children]. We are Native American." The trial court followed up on respondent's comment:

*The Court*: You indicated just a few minutes ago that you are Native American?

[*Respondent*]: Yes.

*The Court*: What tribe is that?

[*Respondent*]: Cherokee. Only we have no blood tests, but my grandmother . . . has stated that to me and her grandchildren and my mother.

*The Court*: All right. Give me just a second. I'm going to ask someone else a question. [Petitioner] or [foster-care case manager], do either of you know if the issue of Native American ancestry has been explored?

[*Petitioner*]: Your honor, I'd have to go through the case file. So that would have been something early on. I don't—it would take a few minutes to take a look.

*The Court*: I just want to make sure. I'm going to guess at some point early in this proceeding, then, you were asked about your Native American ancestry?

[*Respondent*]: During the last trial when my rights were terminated to [two other children], they asked me and the father were we Native American and we both stated yes.

[*LGAL*]: And, your Honor, I'm sorry to interrupt, but when we were here for a preliminary hearing last year, I have on my notes on that petition possible ICLA [sic], which means that Judge Rappleye, or whoever was on the bench, would have asked and [respondent] would have indicated that, I would have noted that. I have nothing else in my file to indicate whether, you know, what happened after that. But just piggybacking on what [respondent] said. She probable said something in Wayne County. She definitely said something in Jackson County. So that was on the record.

*The Court*: So—and [foster-care case manager], you weren't involved at that stage; correct?

[*Foster-care Case Manager*]: That's correct, I was not.

*The Court*: I just want to make sure it got addressed. It sounds like it probably did. But since this is the first—I mean, what typically happens when a parent indicates possible Native American ancestry, particularly when they identify a tribe, a letter gets sent out with the opportunity for the tribe to make a determination; one, whether or not the child is a member or eligible to be a member;

and two, whether or not the tribe desires to intervene in the action. So that usually gets addressed early. Because I didn't have the case early, obviously, I don't have any memory of that.

> [*Petitioner*]: Your Honor, may I?
>
> *The Court*: You may.
>
> [*Petitioner*]: I'm looking at an updated court report dated July 10th of 2024. And on the front of the report it says, "Native American inquiry made," and then it says, "No confirmed tribal affiliation."
>
> *The Court*: Great. Thank you. So it has been addressed.

After this exchange and hearing the remaining testimony, the trial court found that the evidence supported termination under MCL 712A.19b(3)(c), (g), and (j), and that termination was in the child's best interests because of the child's minimal bond with respondent and his strong bond and support in his current placement.

## II. ANALYSIS

"Issues involving the application and interpretation of [the Indian Child Welfare Act] are questions of law that are reviewed de novo." *In re Johnson*, 305 Mich App 328, 331; 852 NW2d 224 (2014) (quotation marks and citation omitted). "Any underlying factual findings are reviewed for clear error." *Id*.

The Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*., "along with MCR 3.977(G), set forth various procedural and substantive protections, mostly duplicative of each other, which are triggered when an Indian child is the subject of a child protective proceeding." *In re Beers*, 325 Mich App 653, 658; 926 NW2d 832 (2018).

Under the MIFPA, the following definitions designate when a child is Indian for the purposes of the statute:

> (k) "Indian child" means an unmarried person who is under the age of 18 and is either of the following:
>
> (*i*) A member of an Indian tribe.
>
> (*ii*) Eligible for membership in an Indian tribe as determined by that Indian tribe. [MCL 712B.3(k). See 25 USC 1903(4).]

Accordingly, subsequent standards and procedures in the MIFPA only apply when the child meets the statutory definition of Indian. MCL 712B.3(k). Pursuant to MCL 712B.9(1), "if the court knows or has reason to know that an Indian child is involved" in a child custody proceeding, then "the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to

intervene." A circumstance where a court would have reason to know that a child is Indian includes any party in the case "inform[ing] the court that the child is an Indian child." MCL 712B.9(4)(a).

Once a trial court knows or has reason to know that the child may be Indian, the following procedures are required under the MIFPA:

> (2) No foster care placement or termination of parental rights proceeding shall be held until at least 10 days after receipt of notice by the parent or Indian custodian and the tribe or the secretary. . . . If the petitioner or court later discovers that the child may be an Indian child, all further proceedings shall be suspended until notice is received by the tribe or the secretary as set forth in this subsection. If the court determines after a hearing that the parent or tribe was prejudiced by lack of notice, the prior decisions made by the court shall be vacated and the case shall proceed from the first hearing. The petitioner has the burden of proving lack of prejudice.

> (3) The department shall actively seek to determine whether a child at initial contact is an Indian child. If the department is able to make an initial determination as to which Indian tribe or tribes a child brought to its attention may be a member, the department shall exercise due diligence to contact the Indian tribe or tribes in writing so that the tribe may verify membership or eligibility for membership. If the department is unable to make an initial determination as to which tribe or tribes a child may be a member, the department shall, at a minimum, contact in writing the tribe or tribes located in the county where the child is located and the secretary. [MCL 712B.9(2) and (3). See 25 USC 1912(a).]

The MIFPA further requires that "all efforts made to determine a child's membership or eligibility for membership in an Indian tribe" must be documented and provided, "upon request, to the court, Indian tribe, Indian child, Indian child's lawyer-guardian ad litem, parent, or Indian custodian." MCL 712B.9(7). In fact, MCL 712B.11 confers a right upon each party "to examine all reports or other documents filed with the court upon which any decision with respect to that proceeding may be based." See 25 USC 1912(c). Finally, under MCL 712B.9(6), "[a] written determination or oral testimony by a person authorized by the Indian tribe to speak on its behalf, regarding a child's membership or eligibility for membership in a tribe, is conclusive as to that tribe."

A conditional reversal of a trial court order terminating parental rights is an appropriate remedy if there is no indication in the record that notice to potential tribes was served. *In re Morris*, 491 Mich 81, 114-123; 815 NW2d 62 (2012); *In re Jones*, 316 Mich App 110, 117-118; 894 NW2d 54 (2016). Mere statements in court reports that an inquiry was made and that the child was not determined to be Indian is insufficient documentation that the potential tribe was notified. *In re Johnson*, 305 Mich App at 330, 332-334.

As noted, respondent clearly indicated that she and the child were Cherokee. Pursuant to MCL 712B.9(4)(a), and consistent with *In re Morris*, 491 Mich at 109, and *In re Jones*, 316 Mich App at 118, statutory-notice requirements were plainly triggered by respondent's statements. The trial court relied on court reports, which indicated that the inquiry had been made in an earlier case,

and concluded that the child was not Indian. However, no additional documentation or receipt of notice to the Cherokee Nation was provided in the record. The trial court also mentioned that it had a note that a previous child protective proceeding determined that respondent's older child was not Indian; however, MCL 712B.9 does not indicate that the trial court or agency may rely on previous inquiries to satisfy notification and determination requirements. Although the trial court's conclusion may be correct, in the absence of any proof that the Cherokee Nation was properly notified, we must err on the side of caution because Indian tribes change their eligibility requirements such that an older child may not have been eligible for membership while a younger child born to the same parents could be, and vice versa. See *In re Morris*, 491 Mich at 109.

Therefore, as required under *In re Morris*, 491 Mich at 109, we must conditionally reverse and remand the case for compliance with notification requirements.[1] We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[1] Respondent does not challenge the trial court's findings regarding statutory grounds. As such, we may presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341 (2000). Nevertheless, having reviewed the record, we hold that the trial court did not clearly err by finding statutory grounds for termination. With respect to MCL 712A.19b(3)(c), the trial court properly found that, given the child's age, respondent did not demonstrate a reasonable likelihood of rectifying the conditions that prompted adjudication in a reasonable amount of time. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009); see also *In re Smith*, 324 Mich App 28, 47-48; 919 NW2d 427 (2018). The trial court also properly found that respondent's failure to secure housing, complete parenting courses, engage with mental-health treatment adequately, and consistently attend parenting time supported termination under MCL 712A.19b(3)(g) and (j). See *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014); see also *In re Rippy*, 330 Mich App 350, 358-360; 948 NW2d 131 (2019).

Respondent also does not challenge the trial court's findings regarding best interests; therefore, we similarly may presume that the trial court did not err in its findings. See *In re JS & SM*, 231 Mich App at 98-99. Nevertheless, having reviewed the record, we hold that the trial court did not err because respondent's noncompliance with her service plan and the child's need for permanency, the child's bond with his placement caregiver, and the caregiver's willingness to adopt him all supported a finding that termination was in his best interests. See *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).